## OZLEY ET AL. vs. IKELHEIMER.

1. A deed of gift, conveying personal property to a married woman " for her own use and benefit alone", creates a separate estate in her, and excludes her husband's marital rights.

2. Where a bill in equity is filed against husband and wife to subject the wife's separate personal estate to the payment of a note executed by her, if the defendants in their answers admit the existence of a separate estate in the wife as charged in the bill, the court will not inquire into the regularity of the execution of the deed under which she holds.

3. If a married woman gives her written obligation for the payment of money, it will be presumed that she intended thereby to charge her separate personal estate ; and therefore, if her creditor files a bill in equity to obtain payment out of her separate personal estate, it is not necessary that he should aver or prove her intention to charge that estate.

4. If the defendant does not take advantage in the court below, by plea or demurrer, of the want of proper parties to the bill, the objection cannot avail on error, unless the absent parties are indispensable to the rendition of a proper decree.

5. One who signed the note as co-maker with the wife, though he would be a proper party to a bill filed by the creditor to subject the wife's separate estate to its payment, is not an indispensable party, when it is averred that he is a non-resident and has no property in this State.

APPEAL from the Chancery Court of Shelby.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed in September, 1850, by Edward Ikelheimer against Gilbert Ozley and Barthena his wife. It alleges, that Mrs. Ozley, together with one Thomas Cost, executed certain promissory notes payable to complainant, amounting in all to about $800, which were still due and unpaid ; that she has a " separate estate in certain personal property, consisting of three negroes and other things of less value, as will appear more fully by a copy of the deed of gift of said property which is hereto appended, and marked exhibit No. 2"; that said Cost is a non-resident of this State, and has no property within its limits out of which to satisfy said debt, or any part thereof; "that Mrs. Ozley absconds, so that the ordinary process of law cannot be served upon her, and has with her the larger portion of her property, and will remove the remainder, unless restrained by the order and

process of this court; and that thereby complainant will lose his debts, or have to sue for it in another State." The prayer of the bill is for an attachment, for a sale of so much of the property attached as may be sufficient to satisfy complainant's debt, and for general relief.

The deed of gift, as exhibited, purports to be executed by "Z. Cross", and conveys the property specified in it "unto Barthena Ozley, for the respect that said Cross has for her and her heirs", "to have and to hold for her own use and benefit alone." The name of "Z. Ozley" is signed to the deed as the grantor; but the clerk before whom it was acknowledged certifies, that "Z. Cross personally appeared", &c., "and acknowledged that he signed, sealed, and delivered the above deed of gift."

Gilbert Ozley answered the bill, alleging, that he and his said wife had separated before said notes were executed, and that a bill for divorce was pending between them at that time; admitting that his wife, at the time she signed the notes, had several negroes in her possession as her own property, "to which respondent sets up no claim whatever, and has no objection to their being made subject to the payment of her debts; and respondent insists, that he had no agency in giving said notes, and is in nowise responsible for the same, as he gave notices in writing, at the time he separated from said Barthena, of said separation, and notified all persons not to trade with her upon his liability."

Mrs. Ozley also filed an answer, admitting the execution of the notes as charged in the bill, but averring that she only signed them as surety for Thomas Cost, who was her son; also admits, "that at the time of, and before the execution of said notes, she was a married woman, the wife of Gilbert Ozley, and that she held a separate estate in certain personal property described in a deed of gift to her, and that exhibit No. 2 appended to complainant's bill is a correct copy of said deed of gift."

On final hearing, the chancellor granted the relief prayed by the bill, and his decree is now assigned for error.

JAS. E. BELSER and SAML. LEEPER, for the appellants:

1. The instrument referred to in the bill as showing that

appellant has a separate estate, which is set forth as part of the bill, shows that she has not a separate estate. "It is not enough that the body of the instrument was drawn in the proper form : it is required to be signed and sealed, before it could become the deed of any one ; and the signature and seal of one man could not make it the deed of another." As the body of the deed shows it was intended to be executed by "Z. Cross", and as it never was executed by him, nor by any person for him, but was signed and sealed only by ".Z. Ozley", it is inoperative.—Townsend v. Corning, 23 Wend. 442; Carter v. *Doe ex dem.* Chaudron, 21 Ala. 72-85.

2. Before the appellant could be charged with the payment of the claim of the appellee, it must appear (by allegations and proof), first, that the property mentioned in the bill was her separate estate ; and, secondly, that she designed to charge it with the payment of the promissory notes set forth in the bill.—Conn v. Conn, 1 Maryland Ch. Rep. 212-217.

3. Even if the property was her separate estate, and she designed to charge it with the payment of said notes, it was erroneous to make her separate estate liable for the whole claim, because the insolvency of Thomas Cost, the principal debtor, is neither averred nor proved.—Conn v. Conn, 1 Md. Ch., *supra*, 219.

4. As it is averred in the answer that she is only the surety of Thomas Cost on said notes ; as that averment is proved ; and as the said Thomas Cost is not a party to the bill, although he is the principal debtor and a necessary party,—the decree for complainants is erroneous ; and the bill should be here dismissed, because, after the fact was averred in the answer and duly proved, he went to trial without making Cost a party.—Batre v. Auze's Heirs, 5 Ala. 173. The complainant ought to have made the principal a party, in order that the surety might be protected by the decree, and not be compelled again to litigate the indebtedness alleged.—Oliver v. Dix, 1 Dev. & Bat. Eq. 158; Dozier v. Dozier, *ib.* 106; McMaken v. McMaken, 18 Ala. 576; Woodward v. Wood, 19 *ib.* 213.

5. In the absence of proof of the value of the separate estate, or of the value of the hire of the slaves, the decree for the speedy sale of the slaves cannot be sustained.—Bradford v. Greenway, 17 Ala. 797 ; Collins v. Lavenberg, 19 *ib.* 682.

6. The bill cannot be sustained under the act of 1846 giving attachments in chancery.—Morgan v. Sprague, 23 Ala. 524; Wright v. Cogswell, 1 McLean 471.

7. The allegation in the bill, and the admission in the answer, that it was her separate estate as shown by the deed attached as exhibit 2 to the bill, is not the allegation or admission of *the fact* that it was her separate estate, but is an allegation that the said deed showed it to be her separate estate. It is the allegation and admission of matter of *law*, and not of fact merely. Such allegations are not good as pleading, and such admissions are not evidence.—Crockett v. Morrison, 11 Misso. 3; Wright v. Cogswell, 1 McLean 471.

8. The bill is fatally defective, and no admissions in the answer and no evidence can help its defects.—Sandford v. Ochtalomi, 23 Ala. 669.

WHITE & PARSONS, *contra:*

A married woman may bind her separate estate by a promise in writing.—Roper on Hus. & Wife, vol. 2, p. 24; 2 Story's Eq., §§ 1398, 1399, 1400; Forrest v. Robinson, 4 Port. 44. As to her separate estate she is regarded as a *feme sole.*—Bradford v. Greenway, Henry & Smith, 17 Ala. 797; Jacques v. M. E. Church, 17 Johns. 548.

If the bill alleges facts which, in law, amount to an allegation of intention on the part of the wife to bind her separate estate, it is the same as a direct allegation of such intention.

The exhibit to the bill is evidently a mistake as to the signature. The deed purports on its face to be the deed of Z. Cross, and the clerk certifies that Z. Cross appeared before him and acknowledged its execution. Such a mistake will not be regarded, or will be considered as amended in this court.—McBroom v. McBroom, 19 Ala. 176. But if it is not a mistake, respondents cannot now raise any objection to the deed, as they admitted in their answers that she held a separate estate under the deed.—Toney v. Moore, 4 Stew. & P. 347; Harrison v. Mock, 10 Ala. 185, 194.

That Mrs. Ozley had a separate estate under the deed, see Strong v. Gregory, 19 Ala. 148.

Thomas Cost was not a necessary party to the bill, even if he had been within the jurisdiction of the court; and the alle-

gation and proof of his non-residence, and of the fact that he had no property within the reach of the court, is a sufficient excuse for not making him a party.—2 Port. 370 ; 20 Ala. 824; 10 Wheat. 168; 8 *ib.* 451, and note on pp. 454-6; 12 *ib.* 193.

The notes are joint and several, and the creditor's -remedy was, as he might elect, against either one or both ; and any defence which could have been made by the principal might also have been urged by the surety in this suit.

The bill is filed in two aspects—under the act of 1846 authorizing equitable attachments, and to subject the separate estate of a married woman to the payment of a debt contracted by her while covert. There is no intervening trust between her and the estate, and no joint estate in the property. A court of equity may render a decree against her as though she were sole.

CHILTON, C. J.—The bill is filed by the appellee to subject the separate estate of Mrs. Ozley, a married lady, to the payment of certain notes executed by Thomas Cost and herself to him. It charges that, at the time of the execution of the notes by her, she was the wife of Gilbert Ozley, and had a separate estate in three negro slaves, and other personal property, which it is said will more fully appear by a deed of gift exhibited with the bill and made part thereof. This deed purports to be a deed of gift from Z. Cross, but is signed "Z. Ozley", and the clerk who certifies to the acknowledgment says, in his certificate, that Z. Cross appeared before him and acknowledged the same to be his deed.

If the deed had been executed by Cross, there is no doubt that it would have created a separate estate in Mrs. Ozley, the property being limited " to her use *only* ", which would exclude her husband as effectually as if the term " separate " had been employed. The intention clearly appears to create a separate estate ; and where this can be gathered from the instrument, the particular language in which it is couched becomes unimportant.—See Jenkins v. McConico, at the present term, and cases there cited.

It is supposed, however, by the counsel for the appellants, that because this deed is not properly executed, the court could not regard Mrs. Ozley as possessed of a separate

Ozley et al. v. Ikelheimer.

estate,—the bill referring to it as vesting such estate, and the answers of both the husband and wife admitting that the wife has a separate property in the chattels attempted to be conveyed by it, as appears by the deed.

It is a sufficient answer to this objection, that there is no issue made by the pleadings as to the existence of a separate estate : its existence is an admitted fact in the case ; and, under these circumstances, we will not stop to inquire into the regularity of the deed under which the defendant (Barthena) holds the property. We must assume that, although the wrong name is signed to the instrument, it is in equity the deed of the proper person—that is, that there exists a mistake in its execution which the court would rectify, and the concessions of the parties are predicated upon the equitable maxim that the Chancery Court may consider that as done which ought to have been done, and which the court upon a proper application could order to be done. Even laying the deed out of view, as being informally executed. it is competent to limit a separate estate by a parol gift; and as the true inquiry, in all such cases, is whether the wife has a separate estate which may be charged with the demand sought to be enforced against it, and not so much as to the manner of its creation, we should not be disposed to turn the complainant out of court, if he had properly averred the fact as to the existence of a separate estate, although he may have mistaken the evidence of the existence of that fact. We repeat, however, that the existence of a separate estate is an admitted fact in the case, and whether it is created by the deed, as the complainant alleges, or exists otherwise, is a matter of no consequence. The defendants admit that the deed does create such estate, and it is not for the court to refuse a decree because it cannot understand how it is the deed creates it. There are, doubtless, such facts connected with it, as in *equity* would make it available for this purpose.

But it is said, it is neither averred nor proved that Mrs. Ozley, in signing the notes, intended to create a charge upon her separate estate. We think the law is now well established in England, (and we have followed the English doctrine upon this subject,) that where a married woman gives her written obligation for the payment of money, it shall be intended that

22

the parties did not do a useless thing : the obligation was intended to create a liability, so far as she was capable of binding herself. Being a married woman, she cannot bind herself personally, either in law or equity, so as to justify a decree which shall bind her personally.—Francis v. Wigzell, 1 Madd. Rep. 264. As, therefore, Mrs. Ozley designed by signing the notes to accomplish something, and nothing could be accomplished if her separate estate is not liable, upon the maxim, " *ut res magis valeat quam pereat* ", we are forced to the conclusion that she intended to charge her separate personal estate.

The doctrine, which for some time obtained in the English chancery courts, that the general engagements of a married woman in writing operate and are valid only as appointments made of her separate estate (see 2 Atk. 379 ; 2 Ves. 142 ; 3 Madd. 94; *ib.* 389), has been justly exploded ; and it appears now to be the settled doctrine of those courts, that a *feme covert*, as to her separate estate, can enter into contracts in the same manner as a *feme sole*, and that her contracts, whether written or verbal, are equally binding, and do not operate merely upon the principle of appointments. Such was the doctrine asserted by Lord Chancellor Brougham, in the elaborate case of Murray v. Barlee, 3 My. & Keene 223 ; see, also, Owens v. Dickinson, 1 Cr. & Phil. 53; 1 Lead. Cases in Eq. (Hare & Wallace's notes) 397, *et seq.*

We entertain no doubt as to the correctness of the chancellor's decree upon this point.

In relation to the objection that Thomas Cost is not made a party to the bill, it is only necessary to observe, that the objection was not raised in any way in the court below, and that it is well settled such defect must be taken advantage of by plea or demurrer, and if it is not thus brought to the knowledge of the court below, this court will not reverse for want of a proper party, if he be not indispensable to the rendition of a proper decree. In this case, Cost might very properly have been made a party, but he is not an indispensable party. A decree can as well be made without, as with him before the court. The case of Robert Conn v. James Conn, 1 Maryland Ch. Rep. 212, 219, if it be conceded to be correct, does not apply to the case before us ; for, in this case,

it is averred by the bill, and admitted in the answer of Barthena Ozley, that Cost is a non-resident of this State, and has no property in the State liable to the demand. Such being the case, the party complainant might well have omitted to make him a party, as no practical purpose could have been attained by bringing him before the court.—Marr's Executor v. Southwick, 2 Por. 351-370, and cases cited.

There is no error in the decree, and it is consequently affirmed.