CARTER vs BARTON.

Opinion delivered January 12, 1899.

1. *Decision of Supreme Court of Arkansas—When Conclusive.*

The decision of the Supreme Court of Arkansas, construing the statutory law of that state, rendered before the extension of

those laws over the Indian Territory are binding upon the courts in the Indian Territory.

2.   *Assignment for Benefit of Creditors—Reservation of Surplus Void*

The reservation to the assignor of any part of his property, liable to execution, from the payment of any of his creditors is void

3.   *Reference to Master—Judgment by Default—Attachment.*

The attachment issue was referred to a master before judgment, under a general rule of the court without objection from either party. Plaintiff obtained judgment for the amount of his claim by default. The attachment issue was not referred to in the judgment. *Held*, The court did not err in failing to dispose of the attachment issue at the time of judgment, and the judgment by default did not sustain the attachment.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Suit in attachment by Barton Bros. against Carter & Ellison. H. E. Casey, assignee, interpleaded. Judgment for plaintiff sustaining attachment. Defendants and interpleader appeal. Affirmed.

The appellants Carter & Ellison, on the 8th day of October, 1895, executed an assignment of their property to secure their creditors, including appellees, making H. E. Casey, appellant, their assignee. On the same day Barton Bros., appellees, brought suit by attachment, and seized the property assigned. On the 28th day of February, 1896, appellants Carter & Ellison filed their motion to dissolve the attachment. On the 5th day of March, 1896, appellees, Barton Bros., took a judgment final by default against appellants Carter & Ellison for the full amount of their claim, the court ordering an execution, in which order no mention was made of the attachment or motion to dissolve

the same.    On  the 15th day of June 1897, Master in Chancery W. H. L. Campbell filed his report in the cause, sustaining the attachment, declaring the assignment invalid, and holding that appellant, H. E. Casey was a party intervener in the cause.   On the 16th day of June, 1897, appellants filed exceptions to said report.   On the 2nd day of February, 1898, the court confirmed the report of the master, and entered judgment, sustaining the attachment, declaring the assignment invalid; also declaring H. E. Casey a party intervener; and rendering judgment against the appellants for all costs in the cause.   Appellants filed motions for new trials, which being  overruled, they prayed an appeal, which was granted by the court, and they brought this cause to this court on appeal.

*Robert H. West*, for appellant.

The law implies a reservation to the assignor of any surplus, after paying debts, and to provide for such reservation in the deed does not render it fraudulent.   Huntley vs Kingman & Co., 152 U. S. 527; Leitch vs Hollister, 7 N. Y. 211;  Bump on Fraudulent Conveyances, 404–406; Burrill on Assignments, (3rd Ed. ) § 207, note 3; Estwick vs Caillant, 5 Term Reports 420; Hempstead vs Johnson, 18 Ark. 136; Floyd vs Smith, 9 Ohio St. 552; Hoffman et al vs Mockall, et al, 5 Ohio St. 135; Buck vs Burdette, 19 A. D. 439; Wilker vs Ferris, 4 A. D. 364; McReynolds vs Dedman, 47 Ark. 347; Collier vs Davies, 47 Ark. 367.

*W. A. Ledbetter* and *S. T. Bledsoe*, for appellee.

An implied reservation of the surplus, as well as an express one will avoid a deed of assignment.   Malcolm vs Hodges, 8 Md. 418; Wolf vs Gray, 53 Ark. 75; M., K. & T. Ry. Co. vs Fuller, 72 Fed. 467; 18 C. C. A. 641; Lawrence vs Morton, 15 Fed. 853; Goddard vs Hopgood, 63 A. D. 272; Truett vs Collier, 74 A. D. 764; 2 Kent Com. 534.

SPRINGER, C. J. The principal contention of appellants in this case is that the trial court erred in holding the deed of assignment in this case executed by appellants Carter & Ellison to H. E. Casey to be invalid. The provision in the deed which the trial court held as invalidating the instrument is as follows: "And, if after paying all the costs, charges, and expenses attending the execution of the trust hereby created; and after fully paying and discharging all lawful demands against the grantors herein as above set forth, and in the manner herein specified, then if any part shall be remaining as a residue of said property, then the said residue, if any, shall be returned to the grantors herein or to their successors or assigns."

The question involved in this case is, where an assignor assigns all his property for the payment of certain specified creditors and reserves the surplus, if any there be, to himself, and where the evidence aliunde shows that there were other creditors, not mentioned in the deed, as to whether or not, by reason of such reservations such an assignment is fraudulent. Counsel for appellants, in order to sustain his contention, quotes from Burrill, Assignm. § 207, which is as follows: "Sec. 207. Whether an assignment providing for only part of the creditors, and without making provision for the rest, directing the assignee to pay back or reassign to the assignor the surplus that may remain after paying the debts provided for, will be sustained, has given rise to much conflict of opinion. The weight of authority is in favor of the validity of such an assignment," citing cases in Alabama, Kentucky, Missouri, Texas, Wisconsin, Indiana, Virginia, Ohio; and also the English case of Estwick v. Caillaud, 5 Term R. 420. Burrill, Assignm. (3d Ed.) § 207, note 3.

The case at bar was, without objection of counsel, under a general order of court, referred to the master in chancery. He submitted his report in the case, after judg-

ment had been rendered by default against appellants Carter & Ellison for the debt. The following is an extract from the master's report: "Said deed provides for the payment by the assignee from the proceeds of the property assigned certain creditors named therein, and requires and directs the assignee, after the payment of said creditors, to return whatever shall remain in his hands to the assignors. It is admitted that said deed conveyed all of the property of defendants subject to execution, and the proof shows that at the time said deed was executed the defendants owed other debts due to other creditors, not named or provided for in the deed. Under the terms of the deed and the condition of the interpleader's bond, if same is conditioned as required by law, he would be compelled to return any money or property remaining in his hands, after the payment of the preferred debts, to the assignor, to the exclusion of the other creditors of the defendants. This, I think, is a reservation for the benefit of the assignors, is preferring themselves to creditors not named in the deed, and renders the deed void at the suit of creditors." The record filed in the case does not contain the evidence upon which the master's report was based, and, in the absence of such evidence, this court will assume that it was ample to sustain the facts reported by the master. In fact, no exceptions were filed to the findings of fact by the master, except that the evidence also showed that "the claims of the creditors whose names and debts were mentioned in said deed amounted to $1,578, and that the value of the entire estate assigned was less than the amount of the claims of the creditors named in the deed." The exceptions to the master's report were all overruled by the court, and the report was confirmed. It must, therefore, in absence of the evidence upon which the report was based, be taken as having reported all the facts which were proven in the case. This excludes the consideration by this court of the alleged fact above set forth.

Reservation of surplus by assignor.

The law as to assignments, which is in force in the Indian Territory, was enacted from the Statutes of Arkansas, sections 305 to 309, inclusive, and section 3374 of Mansfield's Digest. The latter section provides, in brief, that all conveyances of property of every kind, made with intent to hinder, delay or defraud creditors, shall be void. This provision was taken from the statute of frauds. But the assignment law in force in this jurisdiction is also taken from the Arkansas Statutes, and is embraced in the sections above stated. The opinions of the supreme court of that state, construing those statutes before they were transplanted into the Indian Territory, are binding in this court, and decisions of that court since the enactment of the statutes by congress for the Indian Territory, are, at least, highly persuasive as to the construction which should be given to them. The opinion of the learned author of Burrill on Assignments as to the weight of authority of the courts in other states might prevail elsewhere, but in this jurisdiction this court will follow the opinions of the supreme court of Arkansas construing statutes of that state which have been put in force in the Indian Territory. In the case of McReynolds vs Dedman, 47 Ark. 347, 1 S. W. 552—that court used this language: "The reservation of the surplus to the grantor stamps the deed as constructively fraudulent To use the language of Judge Ware in the case of The Watchman, 1 Ware, 247, Fed. Cas. No. 17,251, the grantor prefers himself to a dissenting creditor. An insolvent debtor can reserve no use and benefit to himself out of the property assigned. He may stipulate for a release, but he must dedicate all his property not exempt by law to the payment of all his creditors; not necessarily to the payment of all in equal proportions, for he may prefer such as will execute releases, but the deed must provide for the distribution of any surplus that may remain in the hands of the trustee, after the payment of the preferred creditors, among the

Decisions of
Supreme
Court of Arkansas.

other creditors, whether they assent or not." In the case of Collier vs Davis, 47 Ark. 367, 1 S. W. 684, the supreme court of Arkansas quotes with approval from the case of Malcolm vs Hodges, 8 Md. 418, as follows: An implied reservation of the surplus, after paying the releasing or preferred creditors, to the grantor, avoids the deed equally with an express reservation, and the court cannot look outside of the deed to ascertain whether there be any surplus.' And in case of Wolf vs Gray, 53 Ark. 75, 13 S. W. 512, the supreme court, in reviewing cases on this subject theretofore decided, uses this language: "It was not the stipulation for a release—the validity of which, upon the principles of justice and humanity, Chief Justice English so earnestly and ably maintained in the latter case—that was condemned in Collier vs Davis, but only the reservation of the surplus by the debtor to himself before satisfying his creditors. An insolvent debtor who executes an assignment for the benefit of his creditors, Judge Smith, who pronounced the judgments in both the latter cases, maintained, 'may stipulate for a release; but he must dedicate all his property, not exempt by law, to the payment of all his creditors,—not necessarily to the payment of all in equal proportions, for he may prefer such as will execute releases, but the deed must provide for the distribution of any surplus that may remain in the hands of the trustee, after the payment of the preferred creditors, among the other creditors, whether they assent or not.' "

The contention of counsel for appellents, that the doctrine that the reservation of the surplus avoids the deed of assignment was overruled in Wolf vs Gray, is not supported by the text of the opinion. However unsettled the law of assignments may be in other jurisdictions, it appears quite clear that, in the State of Arkansas and the Indian Territory, the law is well settled that the reservation to the assignor of any part of his property liable to execution,

*Reservation of surplus renders assignment void.*

from the payment of any of his creditors, is fraulent and void.

There is but one other assignment of error in the case at bar. Appellants contend that the ·trial court erred in holding that a judgment by default was not a waiver of the attachment. In support of this contention, counsel for appellants cite section 377 of Mansfield's Digest, which is as follows:

"Sec. 377. An attachment obtained at the commencment of an action shall be sustained or discharged at the time that judgment is rendered in the action, unless for sufficient cause the court extends the time for deciding upon it. An attachment obtained after the commencement of an action shall not be sustained until the defendant has had the time for controverting it provided in this chapter."

It appears from the record in this case that, without objection of counsel on either side, the case, under a general rule of the court, was referred to the master in chancery to report on the attachment issue. When judgment by default was taken against Carter & Ellison, no order was taken as to the attachment. But, by the terms of the general order for reference of such cases to the master, the case at bar was before the master in so far as the attachment issue was concerned. The court could not make any orders in reference to that issue while the case was before the master, except to order him to report or to discharge him from the further consideration of the case. It was not error, therefore, on the part of the trial court, to fail to dispose of the attachment issue when judgment was taken by default for the debt sued for in the case. The judgment of the trial court in this case is affirmed.

CLAYTON, J., concurs.